IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UCB, INC., UCB BIOPHARMA SPRL, RESEARCH CORPORATION TECHNOLOGIES, INC., and HARRIS FRC CORPORATION, | ) ) ) ) | CASE NO.:  4:14-mc-02999 |
| | ) | Honorable Lynn N. Hughes |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ACCORD HEALTHCARE, INC., et al., | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS MYLAN PHARMACEUTICALS INC. AND MYLAN INC.'S MOTION
TO RECONSIDER ORDER QUASHING SUBPOENA ISSUED TO THE UNIVERSITY
OF HOUSTON, RESPONSE TO MOTION TO QUASH, AND MOTION TO COMPEL**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 3

      A.    First Subpoena .................................................................................... 3

      B.    First Amended Subpoena .................................................................... 4

      C.    Second Amended Subpoena ................................................................ 6

      D.    Motion to Quash and Subsequent Negotiations ................................. 7

III.  ARGUMENT ...................................................................................................... 9

      A.    The Court Should Reconsider the Order Quashing the Second Amended
            Subpoena .......................................................................................... 10

            1.    The Court Prematurely Granted UH's Motion to Quash ......................... 10

      B.    UH Failed to Meet the Necessary Burden Required to Quash the Second
            Amended Subpoena .......................................................................... 11

            1.    UH Has Failed to Show the Information Requested Is Irrelevant
                  (Factor 1: Relevance of The Information Requested; Factor 2:
                  Defendants' Need for The Requested Information) ................................ 12

            2.    UH Has Failed to Show the Second Amended Subpoena Is Unduly
                  Burdensome (Factor 3: Breadth of The Requested Information;
                  Factor 4: Time Period Covered by The Request; Factor 5:
                  Particularity of The Request; Factor 6: The Burden Imposed) ............... 14

      C.    Defendants Have Consistently Provided UH with Reasonable Time to
            Comply .............................................................................................. 16

IV.   RELIEF REQUESTED ...................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*CFTC v. Parnon Energy Inc.*,
    2014 U.S. Dist. LEXIS 6766 ...................................................................10, 11, 14,
    16

*Coughlin v. Lee*,
    946 F.2d 1152 (5th Cir. 1991) ...................................................................12

Ewans v. Wells Fargo Bank, N.A.,
    389 F. App'x 383 (5th Cir. 2010) ...................................................................10

*Halliburton Energy Serv. v. M.I.LLC*,
    Misc. Action No. H-06-mc-00053, 2006 U.S. Dist. LEXIS 66374 (S.D.
    Tex. Sept. 15, 2006)...................................................................11

*In re Hall*,
    781 F.2d 897 (Fed. Cir. 1986)...................................................................12, 13

*Tex. Keystone, Inc. v. Prime Natural Res., Inc.*,
    694 F.3d 548 (5th Cir. 2012) ...................................................................10

*Wiwa v. Royal Dutch Petroleum Co.*,
    392 F.3d 812 (5th Cir. 2004) ...................................................................11, 12, 14

## RULES

Federal Rules of Civil Procedure 59(e) ...................................................................1

L.R.7.3-7.4 ...................................................................11

Rule 26(b) ...................................................................12

Rule 45(d)(3)(C) ...................................................................11

I.      **INTRODUCTION**

Pursuant to the Federal Rules of Civil Procedure 59(e), Defendants Mylan Inc. and

Mylan Pharmaceuticals Inc. ("Mylan") respectfully requests that this Court (1) reconsider the

January 12, 2015 Order Quashing the Second Amended Subpoena served on the University of

Houston ("UH") (D.I. 2.); (2) deny UH's Motion to Quash Defendants'[1] Second Amended

Subpoena to produce documents and testify at deposition, and (3) enter an Order directing UH to

comply with Defendants' Second Amended Subpoena, or alternatively, enter an Order directing

UH to produce the witness and documents that it previously informed Mylan it was willing and

ready to produce, or, as a third alternative, comply with Defendants' First Amended Subpoena.

Mylan further respectfully requests an opportunity for oral argument on this Motion pursuant to

L.R. 7.5A.  (S.D. Tex. L.R. 7.5A).

The Court quashed the Second Amended Subpoena eight days prior to the deadline for

Defendants' response.  Consequently, the Court lacked critical information about (1) the

underlying action in Delaware, *UCB Inc. v. Accord Healthcare, Inc.*, C.A. No. 13-1206 (LPS)

(Consolidated) ("Vimpat® Litigation"); (2) the specific information sought in the Second

Amended Subpoena; (3) UH's "common interest" with Plaintiffs in the Vimpat® Litigation; and

(4) UH's failure to fully comply with the First Amended Subpoena despite promises and

representations it would do so.  In particular, the Court was unaware of the following key facts:

---

[1] The following Defendants joined in the First and Second Amended Subpoena: Accord Healthcare, Inc., Intas Pharmaceuticals, Ltd.; Alembic Pharmaceuticals, Ltd.; Amneal Pharmaceuticals, LLC, Amneal Pharmaceuticals of New York, LLC; Apotex, Inc., Apotex Corp.; Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc.; Breckenridge Pharmaceutical, Inc., Vennoot Pharmaceuticals, LLC; Hetero USA Inc., Hetero Labs Limited; Mylan Pharmaceuticals Inc., Mylan Inc.; Sandoz Inc.; Sun Pharma Global FZE, Sun Pharmaceutical Industries, Ltd.; Watson Laboratories, Inc. – Florida (n/k/a Actavis Laboratories FL, Inc.), Watson Pharma, Inc. (n/k/a Actavis Pharma, Inc.), and Actavis, Inc.

- UH has yet to comply with deposition topics 10-12 (and document requests 8-10) of the First Amended Subpoena—a subpoena which UH did not timely move to quash and to which UH previously agreed to comply on numerous occasions—although it has indicated that it has documents ready to be produced and can offer a witness responsive to deposition topics 10-12.

- UH has documents responsive to the Second Amended Subpoena that are ready to be produced, and has witnesses with knowledge of topics noticed in the subpoena.  The Second Amended Subpoena differs from the First Amended Subpoena in that (1) it contains deposition topics and document requests concerning a prior art reference that had not been noticed in any previous subpoenas; and (2) it contains topics supplementing and modifying deposition topics 10-12 (and document requests 8-10) of the First Amended Subpoena.  These topics seek highly relevant information concerning the invalidity of the patent at issue in the Vimpat® Litigation.

- In July 2014, Defendants served a First Subpoena to UH, but UH repeatedly delayed the deposition, failing to produce a witness until four months later in December 2014.  In addition, UH did not produce documents until November 2014.

- UH has a "common interest" with the Vimpat® Plaintiffs, a fact that was not disclosed to Defendants until December 2014 and a significant financial interest in the patent asserted in the Vimpat® Litigation.  In fact, Plaintiffs' counsel helped prepare UH's witness for the December 2014 deposition even though UH is not a party to the underlying Vimpat® Litigation.

- The parties to the Vimpat® Litigation stipulated to extend the deadline for depositions from January 15 to February 6, 2015.  The parties further agreed to allow for a "mutually

agreed time and place" exception for any remaining deposition involving UH that may extend past February 6.

## II.    BACKGROUND

### A.    First Subpoena

The Vimpat® Litigation is a Hatch-Waxman case concerning U.S. Reissue Patent No. RE38,551 (the "'551 Patent"), a patent directed to lacosamide, the active ingredient of Vimpat®, an anticonvulsant drug.  (*See* D.I. 1 at 2.)  Dr. Harold Kohn allegedly invented lacosamide at UH and is the named inventor of the '551 Patent.  (*See* D.I. 1 at 3.)  The validity of the '551 Patent is at the core of the Vimpat® Litigation.  UH has significant financial interest related to the '551Patent.

The First Subpoena, which was served on UH on July 30, 2014, contained deposition topics 1-9 and document requests 1-7, all of which relate to whether a Master thesis submitted by Philippe Le Gall ("Le Gall Thesis")—a former UH graduate student who worked in Dr. Kohn's lab—was publicly accessible before the '551 Patent's priority date. (*See* Ex. A, First Subpoena.) Between July 2014 and December 2014, UH repeatedly delayed scheduling the noticed deposition and producing the requested documents.  Initially, UH offered a deposition in mid-September, only to postpone the deposition to late-September/early October.  UH then declared that no date could be set in late-September.  (*See* Ex. B, 8-20-2014 UHC to DC[2] email; Ex. C, 9-9-2014 UHC to DC email; Ex. D, 9-11-2014 UHC to DC email; Ex. E, 9-24-2014 UHC to DC email.)

---

[2] "UHC" stands for "University of Houston Counsel," who are Ruth Shapiro, Bart Starr or Jason Bernhardt; "DC" stands for "Defendants Counsel," who comprised Richard Greco, Eimeric Reig, or Yongdan Li, and who are attorneys of different Defendants.

## B.     First Amended Subpoena

New information discovered in early October 2014 necessitated service of a First Amended Subpoena on October 9, 2014.  At that time, Defendants became aware that UH had an agreement with Research Corporation Technologies, Inc. ("RCT")—a Vimpat® Litigation Plaintiff—to "commercialize" Dr. Kohn's alleged invention.   (*See* Ex. F, Assignment of Patent Application.)[3]  RCT was obligated to pay UH[4] "a share of the revenues generated by the INVENTION."  Dr. Kohn assigned U.S. Patent Application No. 08/818,688 to RCT, which eventually reissued as the '551 Patent. (*See id*.)

The First Amended Subpoena included original deposition topics 1-9 and document requests 1-7 (concerning the Le Gall Thesis), and new deposition topics 10-12 and document requests 8-10.  The new topics and document requests were simply directed to agreements and communications between UH and the Vimpat® Litigation Plaintiffs, and Dr. Kohn's obligation to assign the rights to his invention to RCT. (*See* Ex. G, First Amended Subpoena.)  As with the First Subpoena, Defendants agreed to postpone the noticed deposition at the request of UH. (*See* Ex. H at 10-27-2014 UHC to DC email.)

Finally, in November 2014, UH offered dates for deposition in early December 2014, but only for topics 1-9 concerning the Le Gall Thesis, and produced documents corresponding to document requests 1-7, which were contained in the First and First Amended Subpoenas.  (*See* Ex. H at 11-3-2014 UHC to DC email; Ex. I, 11-6-2014 UHC to DC Production letter at 2.) Regarding deposition topics 10-12 (and document topics 8-10) in the First Amended Subpoena, UH indicated that it would comply at a later time—UH counsel stated that he would "get back to

---

[3] This was attached to the First Amended Subpoena when it was served.

[4] Due to Dr. Kohn's employment with UH, Dr. Kohn was apparently obligated to assign his invention to UH. (*See* Ex. F, Assignment of Patent Application.)

[Defendants] about a witness for the remaining deposition topics." (*See* Ex. H, 11-3-2014 UHC to DC email.)

The deposition pertaining to the Le Gall Thesis finally took place on December 5, 2014. It was at this deposition that UH's counsel first revealed UH's "common interest" with the Vimpat® Litigation Plaintiffs. Based on a claim of common interest, the Vimpat® Litigation Plaintiffs instructed UH's 30(b)(6) witness, John Lehner, not to answer questions regarding discussions he had with Plaintiffs' counsel to prepare for the deposition. (*See* Ex. K, John Lehner Deposition ("Lehner Dep") excerpts at 188:6-190:25.) Therefore, UH is not a neutral or uninterested non-party.

It is important to note that UH did not timely move to quash the First Amended Subpoena, nor has it ever moved to quash that subpoena. UH's Motion to Quash ***does not*** move to quash deposition topics 10-12 and document topics 8-10 noticed by the First Amended Subpoena. (*See* D.I. 1 at 1-2 (moving to quash "Second Amended Subpoena" and stating, with respect to the First and First Amended Subponas, that "[t]he University has cooperated with Defendants with respect to those prior ***subpoenas***" (emphasis added).) Prior to the issuance of the Court's Order to Quash, UH indicated that it would offer a witness responsive to deposition topics 10-12 of the First Amended Subpoena and that it was ready to produce responsive documents the week of January 19, 2015. (*See* Ex. J at 1-14-2015_8:18AM & 11:33AM UHC to DC emails.) Prior to having any knowledge of the Court's Order to Quash, Mylan attempted to accept that offer on January 15, but did not receive a confirmation from UH that they would stand by that offer. (*See* Ex. T at 1-15-2015_1:43 PM UHC to DC email.)[5] Both the deposition

---

[5] UH did not argue that the Second Amended Subpoena had superseded the First Amended Subpoena in their Motion to Quash. (D.I. 1). However, to the extent UH counsel has recently indicated that they may make this argument, it is inconsistent not only with their Motion to Quash, but also with the fact that

(continued...)

and production of documents responsive to deposition topics 10-12 and document topics 8-10 of the First Amended Subpoena have yet to take place.

### C.      Second Amended Subpoena

From late November to early December 2014, Defendants prepared for the depositions of Dr. Harold Kohn (deposed on December 10-11) and the authors of prior art references asserted by Defendants.   Many of those authors were also former UH students who worked in Dr. Kohn's UH lab (such as Kailash Sawhney, who was deposed on December 8).  In the process of preparing for these depositions, Defendants realized the importance of a Ph.D Dissertation by Daeock Choi ("Choi Dissertation") which was submitted to UH's Department of Chemistry.  Dr. Kohn's deposition testimony regarding Choi's role in connection with the alleged invention further confirmed Defendants' belief that the Choi Dissertation was relevant. Defendants further became aware that UH had agreements regarding royalty proceeds from RCT not only with Dr. Kohn, but also with former students Darrell Watson, Judith Conley, Philippe Le Gall, Kailash Sawhney, Patrick Bardel, and Daeock Choi.

The December depositions reinforced Defendants' belief that it was necessary to obtain more information regarding UH's interests in the Vimpat® Litigation, as well as agreements between UH and Dr. Kohn, the Vimpat® Plaintiffs, and Dr. Kohn's former students.  As a result, Defendants served on UH a Second Amended Subpoena on December 10, 2014.   The Second Amended Subpoena differed from the First Amended Subpoena in that (1) it added new deposition topics 15-23 (and document requests 13-21) relating to the public accessibility of the Choi Dissertation and (2) it added new deposition topics 10-14 (and document requests 8-12)

_____

(...continued from previous page)
UH counsel had indicated UH would comply with the topics of the First Amended Subpoena that UH had not previously complied with, via email and in a subsequent meet and confer on December 30, 2014. (*See* Ex. H, 11-3-2014 UHC to DC email; Ex. Q, 12-30-2014_4:46PM DC to UHC email.)

which supplemented and modified original deposition topics 10-12 (and document requests 8-10) from the First Amended Subpoena.  (*See* Ex. M, Second Amended Subpoena.)  These topics were meant to address UH's interests in Dr. Kohn's alleged invention, its agreements with the Vimpat® Plaintiffs, as well as the students working in Dr. Kohn's lab, and the financial interest UH has in the Vimpat® Litigation and asserted patent.[6]  Such information is highly relevant to invalidity issues, including at least the commercial success aspect of secondary considerations.

Between December 11, the date of the Second Amended Subpoena, and December 29, 2014, UH's counsel did not give any indication that UH had any issues with the Second Amended Subpoena.  In fact, as late as December 27, counsel for UH indicated that UH would comply with the Second Amended Subpoena after the University's employees returned from vacation. (*See* Ex. O, 12-27-2014_11:02AM UHC to DC email.)  All the while, UH was aware that discovery in the Vimpat® Litigation was to end on January 15, 2015.  (*See* D.I. 1 at 2.)

**D.     Motion to Quash and Subsequent Negotiations**

On December 29, 2014, counsel for UH unexpectedly informed Defendants that UH would file a Motion to Quash the Second Amended Subpoena and asked to meet and confer on the motion the very next day.  (*See* Ex. P, 12-29-2014 UHC to DC email.)  On December 30, Mylan's counsel met and conferred with UH's counsel.  The Motion to Quash was filed later that day (D.I. 1).

---

[6] In particular, Defendants amended deposition topic 10 to clarify that the agreements between UH and the Vimpat® Plaintiffs that Defendants sought related to Dr. Kohn's alleged invention of an anticonvulsant, including the specific Kohn patents involved in any such agreements.  Defendants made similar changes to topic 11.  Defendants further added topic 12 to address the scope and content of UH's rights in Dr. Kohn's alleged anticonvulsant invention, added topic 13, which was based on topic 12 from the First Amended Subpoena and added examples of the types of communications sought by Defendants including communications between UH and Dr. Kohn's former students, and added topic 14 directed to the proceeds UH has obtained from Dr. Kohn's alleged invention.   There were similar changes to the corresponding document requests.  (*See* Ex. N, Redline comparing the Second with the First Amended Subpoena.)

During the meet and confer, the parties reached the understanding that, although UH would file the Motion to Quash, the parties would nonetheless try to work out a mutually acceptable and narrower set of deposition topics and document requests and UH counsel represented that UH would abide by its prior agreement to comply with the First Amended Subpoena.  (*See* Ex. Q, 12-30-2014_4:46PM DC to UHC email.)  On January 5, 2015, Mylan sent revised topics for UH counsel's review as discussed during the meet and confer. (*See* Ex. R, 1-5-2014 DC to UHC email.)  On January 14, UH's counsel indicated a willingness to produce the following documents responsive to the Second Amended Subpoena:

> Revised Request 8:  The University is willing to respond with the licensing, non-disclosure and similar agreements between it and RCT.
> Revised Request 9:  The University is willing to respond with Board of Regents policies regarding faculty obligations, at the time, to assign rights to inventions to the University.
> Revised Request 10:  Same as 8 and 9.
> Revised Request 11:  Given that your revisions completely revise this request, no additional documents will be produced.
> Revised Request 12:  The University is willing to respond with a simple spreadsheet showing the revenue it has earned from the patent.
> Revised Request 13:  The relevant portions of the 1994-96 Graduation Professional Studies Catalog will be produced.
> Revised Requests 14-16:  Library documents for the Choi Dissertation similar to those produced for the Le Gall Thesis will be produced.

(*See* Ex. J at 1-14-2015_8:18AM UHC to DC email.)  UH also stated that they "should be able to produce the documents middle of next week," *i.e.*, the week of January 19, and that "the University will present a witness on the three remaining topics from the First Amended Subpoena (topics 10-12)."  (*See* Ex. J. at 1-14-2015_11:33AM UHC to DC email.)  Mylan agreed to the proposed document production schedule, but objected to the fact that UH would not provide a witness on topics relating to the Choi Dissertation.  (*See* Ex. S at 1-14-2015_5:11 PM DC to UHC email.)  UH refused the request and stated that it would be "standing on its Motion to Quash."  (*See* Ex. S at 1-15-2015 9:17AM UHC to DC email.)

Mylan tried again to resolve the issues, agreeing to UH's proposal to produce responsive documents by mid-week the week of January 19, and conduct a deposition for topics 10-12 of the First Amended Subpoena via email, but did not receive a response from UH.  (*See* Ex. T at 1-15-2015_1:43 PM UHC to DC email.)  In short, Mylan attempted to accept UH's offer to produce documents and a witness on *January 15*, before receiving the *January 16* electronic notice of the Court's Order Quashing Subpoena. (*See* Ex. T at 1-15-2015_1:43 PM UHC to DC email; Ex. U, 1-16-2014 Electronic notice.)   On the morning of January 16, having received no response from UH regarding Mylan's January 15 email, Mylan then informed UH that they would file an opposition to the Motion to Quash on January 16.  (*See* Ex. T at 1-16-2015_11:37AM UHC to DC email.)  However, on January 16, before Mylan could file a response to the Motion to Quash, the parties received electronic notice that the Court granted UH's Motion to Quash on January 12.  (*See* Ex. U, 1-16-2014 Electronic notice.)  Prior to the January 16 electronic notice of the Court's Order Quashing Subpoena, Mylan was not aware of the Court's Order Quashing Subpoena.

After the electronic notice of the Court's Order Quashing Subpoena was issued on January 16, Mylan sought clarification from UH counsel regarding whether UH will abide by the First Amended Subpoena consistent with its prior agreement to abide by, and failure to move to quash, the subpoena.  (*See* Ex. Y at 11-16-2015_4:50 PM DC to UHC email.)  Mylan also requested to have a meet and confer with UH after informing UH of Mylan's plan to file the present motion.  (*See id*.)  After further attempts to request a meet and confer, the parties met and conferred on the morning of January 22, 2014, and the parties again did not reach a resolution as of the time of filing.

## III.    ARGUMENT

The Court ruled on UH's Motion to Quash eight days prior to the deadline for

Defendants' response allowed under the local rules.  The Court did not have the benefit of key information relevant to the dispute.  Therefore, Mylan requests that the Court reconsider its Order Quashing the Second Amended Subpoena.  Upon reconsideration, Mylan asks that the Court deny UH's Motion to Quash because UH has failed to meet its burden.

### A.    The Court Should Reconsider the Order Quashing the Second Amended Subpoena

Motions to reconsider allow a party "to correct manifest errors of law or fact or to present newly discovered evidence." *Evans v. Wells Fargo Bank, N.A.*, 389 F. App'x 383, 389-90 (5th Cir. 2010) (citation and internal quotation marks omitted). The Court should reconsider its decision to quash the Second Amended Subpoena because Mylan was not afforded an opportunity to present pertinent facts to the Court, leading to errors of both law and fact.  *See CFTC v. Parnon Energy Inc.*, Misc. Action No. H-13-2975, 2014 U.S. Dist. LEXIS 6766, at *3-4 (S.D. Tex. Jan. 17, 2014) (granting motion to reconsider order quashing subpoenas based on the finding that the subpoenas should not have been quashed without the benefit of a response from the party who issued the subpoenas).

### 1.    The Court Prematurely Granted UH's Motion to Quash

UH filed its Motion to Quash on December 30, 2014.  (*See* Ex. V, 12-30-2014 Electronic notice.)  The Court signed the Order granting the Motion to Quash on January 12, before Mylan had a reasonable chance to respond. (*See* D.I. 2.)[7]  The Fifth Circuit has held that a non-moving party is entitled to a reasonable period to respond to a motion to quash a subpoena. *See Tex. Keystone, Inc. v. Prime Natural Res., Inc.*, 694 F.3d 548, 556 (5th Cir. 2012) (holding that district court abused its discretion by quashing subpoena without providing reasonable time for

---

[7] The parties received electronic notice of the Order on January 16, 2015.  (Ex. U, 1-16-2014 Electronic notice.)

issuing party to respond to motion).  Moreover, under the S.D. Tex. local rules, the non-moving

party's deadline for responding to a motion is "by the submission day" which is "21 days from

filing."  (*See* S.D. Tex. L.R.7.3-7.4.)  January 21, 2015 is the 21st day after UH filed its Motion

to Quash on December 30, 2014.[8]

Further, the Order Quashing the Second Amended Subpoena does not indicate that the

Court considered and applied the necessary factors to determine whether Defendants' Second

Amended Subpoena is unduly burdensome. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d

812, 818-19 (5th Cir. 2004) (finding abuse of discretion where district court did not explain any

deficiencies in the subpoena, attempt to modify it, or hold a hearing on its breadth).[9]

Accordingly, Defendants ask that the Court reconsider the Order Quashing the Second Amended

Subpoena (D.I. 2).

### B.    UH Failed to Meet the Necessary Burden Required to Quash the Second Amended Subpoena

UH, as the movant seeking to quash, bears a "heavy" burden to show that "'compliance

with the subpoena would be unreasonable and oppressive.'"  *See CFTC*, 2014 U.S. Dist. LEXIS

6766, at *11-12 (citing *Wiwa*, 392 F.3d at 818-19); *Halliburton Energy Serv. v. M.I.LLC,* Misc.

Action No. H-06-mc-00053, 2006 U.S. Dist. LEXIS 66374, at *6 (S.D. Tex. Sept. 15, 2006).  In

addition, UH must satisfy a six factor test for a court to quash a subpoena: (1) relevance of the

information requested; (2) the need of the party for the documents; (3) the breadth of the

---

[8] Out of an abundance of caution, and in light of the Martin Luther King Holiday on January 20, 2015, Mylan notified UH that it would file a response on January 16, 2015.  (*See* Ex. T at 1-16-2015_11:37AM UHC to DC email.)  However, Mylan received notice of the Order Quashing the Second Amended Subpoena during the process of finalizing the response.  (*See* Ex. U, 1-16-2014 Electronic notice.)

[9] Rule 45(d)(3)(C) provides the Court with the discretion to modify, rather than quash, subpoenas if the serving party (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated. While the determination of whether to quash a subpoena is left to the sound discretion of the district court, there is a strong preference for modification over quashing. *See Wiwa*, 392 F.3d at 818.

document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.  *See Wiwa*, 392 F.3d at 818-19.

UH has not met this heavy burden.  Instead, UH possesses unique information pertinent to Defendants' invalidity positions, information that it is ready to produce.

> **1.      UH Has Failed to Show the Information Requested Is Irrelevant (Factor 1: Relevance of The Information Requested; Factor 2: Defendants' Need for The Requested Information)**

Rule 26(b) allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). Civil discovery is broad, allowing inquiry into any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party. *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991).

The information sought in the Second Amended Subpoena is not only relevant, but is needed to support Defendants' invalidity arguments in the Vimpat® Litigation.  Defendants added the Choi Dissertation[10] as an invalidating reference in their First Amended Invalidity Contentions served on January 15, 2015.  (*See* Ex. W, Excerpts from First Amended Invalidity Contentions[11] at p. 21.)  Deposition topics 15-23 and document topics 13-21 in the Second Amended Subpoena address the Choi Dissertation.  Information sought by these topics are expected to reveal facts that would establish when the Choi Dissertation became publicly

---

[10] UH Motion to Quash mentions a 1995 publication co-authored by Dr. Choi, but that is a journal article which is not the same as the Choi Dissertation. (*See* Ex. W, First Amended Invalidity Contentions Excerpts (cf. item 18 with item 29 on p. 4).)

[11] The portions excerpted from the First Amended Invalidity Contentions do not contain confidential information.

accessible, possibly qualifying it as a prior art reference relevant to the invalidity of the '551 Patent. [12]  *See In re Hall*, 781 F.2d 897, 899-900 (Fed. Cir. 1986).

Only UH can provide 30(b)(6) witness testimony regarding how and when the Choi Dissertation was cataloged and shelved in the UH library.  *See In re Hall*, 781 F.2d 897, 898-900 (Fed. Cir. 1986) (holding that a dissertation shelved at a university library was a prior art printed publication based on an affidavit of the director and manager of the loan department of the university regarding the library's general practice for indexing, cataloging, and shelving theses).  Mr. John Lehner, UH's 30(b)(6) witness and a UH Librarian, was able to testify as to how and when the Le Gall Thesis was cataloged and shelved in a UH library based on library records and his (and other library staff's) knowledge and experience working in UH Libraries.  (*See* Ex. W, Excerpts from First Amended Invalidity Contentions at p.10-13).  Therefore, Mr. Lehner would also be able to testify regarding the same procedures for the Choi Dissertation.  Moreover, UH indicated that they have responsive documents.  For example, Defendants requested UH's library records concerning the Choi Dissertation (*see, e.g.*, Ex. M, Second Amended Subpoena) through document requests 13-18.  Prior to the Court's Order Quashing Subpoena, UH indicated that it was willing and ready to produce "[l]ibrary documents for the Choi Dissertation similar to those produced for the Le Gall Thesis" by the "middle of next week," *i.e.,* the week of January 19.  (Ex. J, 1-14-2015 _8:18AM UHC to DC email; 1-14-2015_11:33AM UHC to DC email.)

Second, the other topics noticed in the Second Amended Subpoena (deposition topics 10-14 and document requests 8-12) simply supplemented original deposition topics 10-12 (and document requests 8-10) of the First Amended Subpoena.  These additional topics concern UH's

---

[12] During the meet and confer process, and prior to UH's Motion to Quash, Mylan explained why the information sought regarding the Choi Dissertation is "highly relevant" to Defendants' invalidity case.  (*See* Ex. R, 1-5-2015 DC to UHC email.)

interests in Dr. Kohn's alleged invention; its relationship with the Vimpat® Plaintiffs, Dr. Kohn, and the students working in Dr. Kohn's lab; UH's relationships with the same; and UH's financial interest in Vimpat®.  (*See* Ex. M, Second Amended Subpoena.)  UH's agreements with Plaintiffs, Dr. Kohn, and UH graduate students limited to the alleged invention are necessary to understand whether these students—in particular, Philippe Le Gall and Daeock Choi—actually invented the anticonvulsant in dispute.  Further, such agreements would show the nature of any arrangement between UH and the students regarding any consideration in exchange for their contribution and cooperation.

The information Mylan requests is further relevant to at least the commercial success of the alleged invention, which may indicate whether an alleged invention is in fact novel.  UH's financial gain from Vimpat® is tied to the revenues from Dr. Kohn's alleged invention (*see* Ex. F, Assignment of Patent Application).  Therefore, financial information related to Vimpat® is relevant to any alleged commercial success of the invention.

Prior to the Court's issuance of the Order Quashing the Second Amended Subpoena, UH's counsel had indicated that UH was ready to produce documents responsive to Defendants' requests.  (*See supra* at 7; Ex. J, 1-14-2015_8:18AM UHC to DC email.)  Moreover, UH previously stated that "the University will present a witness on the three remaining topics from the First Amended Subpoena (topics 10-12)."  (*See* Ex. J, 1-14-2015_11:33AM UHC to DC email.)  Accordingly, there does not seem to be a dispute regarding the relevance of the requests set forth in the Second Amended Subpoena.

   **2.     UH Has Failed to Show the Second Amended Subpoena Is Unduly Burdensome (Factor 3: Breadth of The Requested Information; Factor 4: Time Period Covered by The Request; Factor 5: Particularity of The Request; Factor 6: The Burden Imposed)**

UH has also failed to show that the topics added in the Second Amended Subpoena are

"'unreasonable and oppressive.'"  *See CFTC*, 2014 U.S. Dist. LEXIS 6766, at *11-12 (citing

*Wiwa*, 392 F.3d at 818-19.)  The topics Defendants added in the Second Amended Subpoenas are

of reasonable breadth (factor 3), are limited to a reasonable time period (factor 4), are noticed

with particularity (factor 5), and are not unduly burdensome (factor 6).  For example, topics

relating to the Choi Dissertation (deposition topics 15-23 and document topics 13-21) mirror the

topics for the Le Gall Thesis, which were clearly of appropriate breadth and particularity since

UH produced documents and a witness for those topics.  With respect to the Choi Dissertation,

the time period is limited to a starting point of December 1995 (*see, e.g.*, document request 20).

In contrast, the Le Gall Thesis requests went as far back as 1987, a time frame with which UH

had no problem.  (*See* Ex. M, Second Amended Subpoena, *cf.* topics 1 and 20.)  Moreover, the

fact that UH was ready to produce responsive documents regarding the Choi Dissertation further

demonstrates that the topics are not unduly burdensome.  (Ex. J, 1-14-2015 _8:18AM UHC to

DC email; 1-14-2015_11:33AM UHC to DC email.)

    With regard to the other topics—deposition topics 10-14 and document topics 8-12—

each point out with reasonable particularity that the information requested concerns UH's rights

in Dr. Kohn's alleged invention, its relationship and agreements with Plaintiffs, as well as the

students working in Dr. Kohn's lab, and UH's financial interest in Vimpat®.  (*See* Ex. M,

Second Amended Subpoena.)  As stated above, these additional topics and requests simply

supplement and modify the topics and requests set forth in the First Amended Subpoena, a

subpoena to which UH has no objections. (*See* Ex. N, Redline comparing the Second with the

First Amended Subpoena.)  Contrary to UH's exaggeration that the Defendants now demand that

UH produce all agreements "relating to Dr. Kohn's primary area of research" (D.I. 1 at 7), these

particular topics are narrowed to agreements relating to Dr. Kohn's alleged anticonvulsant

invention, the technology at issue in the Vimpat® Litigation.  (*See* Ex. M, Second Amended Subpoena.)

Further, UH's reference to "several people" who are not parties to the litigation (D.I. 1 at 7), does not reflect a lack of particularity.  In fact, the Second Amended Subpoena refers to former students who worked in Dr. Kohn's lab.  These students are also prior art authors and share in the royalty payments of Dr. Kohn's alleged invention that is the subject of the Vimpat® Litigation.  Therefore, Mylan has reason to believe that UH maintains documents with regard to these individuals.

UH has failed to establish that the information Mylan seeks cannot be obtained from UH.  *See CFTC v. Parnon Energy Inc*., 2014 U.S. Dist. LEXIS 6766, at *11-12.  Further, UH cites no support for its claim that Mylan is able to get the same information requested from Plaintiffs or Dr. Kohn, or any other source.  Indeed, UH stated it was prepared to begin producing documents responsive to the Second Amended Subpoena even before the Court issued its Order Quashing Subpoena.   (*See* Ex. J, 1-14-2015 8:18AM UHC to DC email; 1-14-2015_11:33AM UHC to DC email.)  Accordingly, the information Mylan seeks is not unduly burdensome.

C.    **Defendants Have Consistently Provided UH with Reasonable Time to Comply**

In its Motion, UH presented a view that is contrary to the parties' course of dealing.  As is explained above, the parties' course of dealing over many months (from July to December 2014) demonstrates that Defendants have always acted diligently and accommodated UH's wishes regarding the timing for deposition and document production.  Defendants acted no differently with respect to the Second Amended Subpoena.  The January 5 date on the subpoena was subject to rescheduling according to UH's actual availability, which had always been the case with respect to Defendants' previous subpoenas.  The date noticed on the subpoena was not

purposefully chosen to interfere with UH's holiday schedule in anyway whatsoever.  In fact, UH's counsel never informed Defendants of UH's holiday schedule, or even contacted Defendants between December 11—when the Second Amended Subpoena was served—and December 27, 2014.  On December 27, when UH's counsel finally informed Defendants that January 5 would not be a workable date, Defendants did not insist on going forward on that date, nor did counsel for UH accuse Defendants of intentionally trying to interfere with or ignore UH's holiday schedule.  (*See* Ex. O, 12-27-2014 UHC to DC email.)

It is also worth noting that Plaintiffs, who share a common interest with UH, have stipulated to extend the deadline for depositions from January 15 to February 6, 2015.  (*See* Ex. X, Stipulation Extending Time.)  Further, the parties made a special carve-out for UH, agreeing to a "mutually agreed time and place" exception to the new February 6, 2015 deadline, meaning that any future depositions of UH may occur after the February 6 deadline.  (*Id.*)

## IV.   RELIEF REQUESTED

The Court issued its Order Quashing the Second Amended Subpoena before Defendants had the opportunity to respond to UH's Motion to Quash the Second Amended Subpoena (and before the deadline permitted by the local rules).  The Court proceeded without the benefit of key facts pertinent to this dispute.  In addition, UH failed to carry its heavy burden of establishing that compliance with the Second Amended Subpoena creates an undue burden.  Mylan therefore respectfully request that this Court enter an Order:

(1) Reconsidering the December 12, 2014 Order Quashing the Second Amended Subpoena;

(2) Denying UH's Motion to Quash Defendants' Second Amended Subpoena to produce documents and testify at deposition; and

(3) Directing UH to comply with Defendants' Second Amended Subpoena or alternatively[13], directing UH to produce (a) a witness for deposition topics 10-12 of the First Amended Subpoena and (b) the following documents[14]:

- the licensing, non-disclosure and similar agreements between UH and RCT;

- Board of Regents policies regarding faculty obligations, at the time, to assign rights to inventions to the University;

- a spreadsheet showing the revenue UH has earned from the '551 patent;

- the relevant portions of the 1994-96 Graduation Professional Studies Catalog; and

- library documents for the Choi Dissertation similar to those produced for the Le Gall Thesis.

---

[13] As a third alternative, Mylan respectfully requests that the Court direct UH to comply with the unfulfilled portion of the First Amended Subpoena, namely, deposition topics 10-12 and document request 8-10, consistent with UH's prior representation and agreement that they would comply with those topics and document requests and their failure to move to quash. (*See* Ex. H, 11-3-2014 UHC to DC email; D.I. 1 at 3-4.)

[14] UH had indicated that they were willing and ready to produce the witness and the documents listed above.  (*See* Ex. J at 1-14-2015_8:18AM & 11:33AM UHC to DC emails).

Dated:  January 22, 2015          WILSON SONSINI GOODRICH & ROSATI
                                    Professional Corporation


By:   */s/:Nicole W. Stafford*
Nicole W. Stafford
Attorney-in-Charge
State Bar No. 24002991
Southern Dist. of Texas Bar No.
*Pro Hac Vice Motion to be Filed*
Anna G. Phillips
State Bar No. 24090329
Southern Dist. of Texas Bar No.  2451053
WILSON SONSINI GOODRICH & ROSATI, P.C.
900 South Capital of Texas Highway
Las Cimas IV, Fifth Floor
Austin, TX 78746
Phone 512.338.5400
Fax 512.338.5499

Yongdan Li
California State Bar No. 265281
Southern Dist. of Texas Bar No.
*Pro Hac Vice Motion to be Filed*
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, 15th Floor
Los Angeles, CA 90071
Phone: 323-210-2907
Fax: 866-974-7329


*Attorneys for Defendants Mylan*
*Pharmaceuticals Inc. and Mylan, Inc.*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1(D) of the United States District Court for the Southern

District of Texas, I certify that Mylan has conferred with counsel for the University of Houston,

and counsel cannot agree about the disposition of the foregoing motion.


/s/: *Anna G. Phillips*
Anna G. Phillips

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was served upon the

following counsel in the manner listed below on the 22th day of January, 2015:

### <u>Via ECF and Electronic Mail</u>
Jason R. Bernhardt
JPMorgan Chase Tower, Suite 1100
Houston, Texas 77002
713-650-8400-Telephone
713-650-2400-Facsimile

*Attorneys for Non-Party The University of Houston*

### <u>Via ECF and Electronic Mail</u>
Paul J. Berman
Covington & Burling, LLP
120 Pennsylvania Avenue NW
Washington, DC 20004
pberman@cov.com
*Counsel for Plaintiffs*

### <u>Via Electronic Mail</u>
John C. Phillips, Jr.
Megan C. Haney
Phillips Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806
jcp@pgslaw.com
mch@pgslaw.com
*Counsel for Defendants Amneal Pharmaceuticals, LLC, Amneal Pharmaceuticals of New York, LLC, Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., Breckenridge Pharmaceutical, Inc., Vennoot Pharmaceuticals, LLC, Sandoz Inc., Sun Pharma Global FZE, Sun Pharmaceutical Industries, Ltd, Watson Laboratories, Inc. — Florida (n/k/a Actavis Laboratories FL, Inc.), Watson Pharma, Inc. (n/k/a Actavis Pharma, Inc.), and Actavis.*

### <u>Via Electronic Mail</u>
John W. Shaw
Shaw Keller LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
jshaw@shawkeller.com
*Counsel for Defendants Accord Healthcare, Inc. and Intas Pharmaceuticals Ltd.*

**Via Electronic Mail**
Richard D. Kirk
Stephen B. Brauerman
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
*Counsel for Defendants Alembic Pharmaceuticals Ltd. and Alembic Limited*

**Via Electronic Mail**
Kenneth L. Dorsney
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
kdorsney@morrisjames.com
*Counsel for Defendants Apotex Corp. and Apotex, Inc.*

**Via Electronic Mail**
Dominick T. Gattuso
Proctor Heyman LLP
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
dgattuso@proctorheyman.com
*Counsel for Defendants Hetero USA Inc. and Hetero Labs Limited*

**Via Electronic Mail**
Francis J. Murphy
Murphy & Landon
1011 Centre Road, Suite 210
Wilmington, DE 19806
fmurphy@msllaw.com
*Counsel for Defendants Zydus Pharmaceuticals (USA) Inc. and Cadila Healthcare Ltd.
d/b/a Zydus Cadila*

*/s/: Anna G. Phillips*
Anna G. Phillips